[No. H024665. Sixth Dist. Aug. 15, 2003.]

DINO JARAMILLO, et al., Plaintiffs and Respondents, v.
JH REAL ESTATE PARTNERS, INC., et al., Defendants and Appellants.

## COUNSEL

Manly & McGuire, Morgan A. Stewart; Emerson, Corey & Barsotti, James D. Emerson and Ryan D. Libke for Defendants and Appellants.

Bohnen, Rosenthal & Dusenbury, Jane E. Bednar, Robert E. Rosenthal and Barbara May for Plaintiffs and Respondents.

## OPINION

**ELIA, J.**—Defendants JH Real Estate Partners, Inc., JH Management Co., LLC and United Dominion appeal from the denial of their motion to compel arbitration. (Civ. Code, § 1294, subd. (a).) The case involves the enforceability of an arbitration provision contained in a residential lease.

On appeal, defendants assert that the trial court erred by denying their motion because the arbitration provision was not unconscionable and did not lack mutuality. We asked the parties to discuss, in supplemental briefs, the effect of Civil Code[1] sections 1942.1 and 1953 on the issue of unconscionability of the arbitration clause and whether section 1953, subdivision (a)(2) to (a)(4), precluded compelled binding arbitration. After careful consideration of these issues, we affirm the trial court's ruling.

### A. Procedural History

On March 7, 2002, Dino Jaramillo and Kim Jaramillo (the Jaramillos) filed a complaint against JH Real Estate Partners, Inc., JH Management Co., LLC, and United Dominion, later corrected to read United Dominion Realty, L.P. They alleged causes of action for general negligence, intentional tort, premises liability, breach of contract, breach of the implied warranty of habitability, and unfair business practices and false and deceptive advertising.

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

In regard to general negligence, the Jaramillos alleged in their complaint that beginning on October 5, 2000 and continuing thereafter, the defendants "negligently inspected, maintained or repaired the subject premises resulting in water incursion and dangerous and unhealthful levels of moisture in walls and ceilings, mold, mold mycotoxins, airborne mold spores, fungus, and bacteria in the rental unit occupied by plaintiffs." The Jaramillos further alleged that this dangerous condition and its negligent cause was not discovered, and could not have been discovered in the exercise of reasonable diligence, until January 2002.

In regard to intentional tort, the Jaramillos alleged in their complaint that beginning on October 5, 2000 and continuing thereafter, defendants intentionally caused damage to them by failing and refusing to "provide a clean, sanitary and habitable living space for plaintiffs despite defendants' knowledge that defendants' negligence as described herein above had caused plaintiff's [*sic*] rental unit to be in an unsafe, unsanitary and dangerous condition due to the presence of mold, mold spores, mycotoxins, fungus, and bacteria." They further alleged that during "about January 2002, defendants improperly caused one or more three-day notices to pay rent or quit to be served on plaintiffs in retaliation for plaintiffs' filing a report with the Monterey County Health Department concerning the unsanitary living conditions in their unit, intentionally causing plaintiffs severe emotional distress."

In regard to premises liability, the Jaramillos stated in their complaint that they had "suffered physical injury and severe emotional distress as a result of unhealthful and unsanitary conditions" in their rental unit. They also averred that, about April 2001, Kim Jaramillo slipped and fell on a concrete ramp located on the premises and she injured her knee, and the injury was proximately caused by the defendants' failure to inspect and to repair or maintain the ramp.

In regard to the breach of the implied warranty of habitability, the Jaramillos alleged that defendants failed to provide and maintain a clean, sanitary and habitable rental unit.

In regard to violation of Business and Professions Code sections 17200 and 17500 et seq., the Jaramillos alleged that defendants' actions constituted unfair business practices. They further averred that defendants "falsely advertised and represented that rental units at the subject premises were in a clean and sanitary condition, complied with all applicable health, safety and building laws and ordinances, and were safe and were fit for human habitation ...."

On May 14, 2002, defendants moved for an order compelling arbitration based on the arbitration provision contained in the JH Management Rental Agreement between the JH Management Company, LLC, the landlord's

agent, and the Jaramillos. The arbitration clause provides for binding arbitration of personal injury disputes in a provision titled "Arbitration of Personal Injury Disputes." Section 22 of the agreement states in small, boldface print: "Any dispute between the parties relating to a claim for personal injury, directly or indirectly relating to, or arising from, the condition of the leased premises, or the apartment community, shall be resolved by arbitration conducted by the American Arbitration Association." Although the arbitration provision states that the American Arbitration Association rules govern, it also imposes the restriction that any demand for arbitration be made in writing "within 180 days after the claim, dispute or other matter in questions [*sic*] has arisen." The section provides in small, nonboldface print that the arbitration shall be conducted before three arbitrators and all administrative fees and costs shared equally by the landlord and resident and "all such fees must be advanced prior to the arbitration ...." The section also states in small, nonboldface print: "Nothing in this section shall be deemed to limit the Landlord's rights in the event of Resident's breach or default under this agreement, including without limitation, Landlord's right to bring an action for Unlawful Detainer under the laws of the State of California."

In their memorandum of points and authorities in opposition to the motion, the Jaramillos argued that the arbitration clause was unconscionable and should not be enforced. They contended that they were the parties with the weakest bargaining power and the requirement of arbitration before three arbitrators and payment of their half share of the costs in advance constituted "an undue economic burden" and put them at a "gross economic disadvantage relative to the corporate landlord." They also asserted that the court had authority to deny the motion because there was a possibility of conflicting rulings since not all defendants were parties to the arbitration clause, citing Code of Civil Procedure section 1281.2, subdivision (c). The Jaramillos maintained that their claims for property damage, intentional infliction of emotional distress, and punitive damages were outside the scope of the arbitration clause.

In their reply memorandum, the defendants argued that all of the Jarmillos' claims arose from the condition of the leased premises and fell within the purview of the arbitration clause. The defendants maintained that the plaintiffs failed to show that the rental agreement was a contract of adhesion or that the arbitration clause was outside the reasonable expectations of the weaker party or unconscionable. They declared that "the arbitration provision was prominent, conspicuous, simple and straightforward" and its terms and burdens applied equally to plaintiffs and defendants.

The motion was heard on June 14, 2002. The Jaramillos' attorney first asserted that the arbitration clause was unconscionable because the terms of

the lease were nonnegotiable, the clause was buried in the rental agreement, and it required three AAA arbitrators to hear a dispute. Their attorney indicated that, in her experience, one AAA arbitrator cost $2,000 to $3,000 per day. The Jaramillos' attorney also argued: "[T]he causes of action alleged in the plaintiff's [*sic*] complaint do include causes of action for breaches of warranties express and implied in the lease. [¶] Some of those happen to have resulted in personal injuries. Others happened to have resulted in property damage. [¶] So obviously there isn't strict mutuality of remedy here, Your Honor."

The court pointed out that the arbitration clause expressly stated that nothing in the section limited the landlord's rights in the event of a resident's breach or default under this agreement, including the landlord's right to bring an action for unlawful detainer. The court denied the motion, stating that the arbitration clause did not provide mutuality to the tenants.

### B. *Legal Principles*

"Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. ([Code Civ. Proc.,] § 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] .) "[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction). Further, the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 33.)

"California law, like federal law, favors enforcement of valid arbitration agreements. [Citation.] … [U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation [fn. omitted] of any contract. (9 U.S.C. § 2; see also, Code Civ. Proc., § 1281.) In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98 [99 Cal.Rptr.2d 745, 6 P.3d 669].) "Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement under Code of Civil Procedure section 1281 …." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 114.)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. ([*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807], pp. 817–819 [171 Cal.Rptr. 604, 623 P.2d 165].) 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' (*Scissor-Tail, supra,* at p. 820, fn. omitted.)" (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 113.)

" 'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable." ' (*Ibid.*)" (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 113.)

"In 1979, the Legislature enacted Civil Code section 1670.5, which codified the principle that a court can refuse to enforce an unconscionable provision in a contract. (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925 [216 Cal.Rptr. 345, 702 P.2d 503] ....) As section 1670.5, subdivision (a) states: 'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' " (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 114.)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' (*Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th [1519] at p. 1533 [60 Cal.Rptr.2d 138] (*Stirlen*).) But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that

creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at p. 114.)

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979].) "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided. One such form, as in *Armendariz*, is the arbitration agreement's lack of a ' "modicum of bilaterality," ' wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration. (*Armendariz, supra*, 24 Cal.4th at p. 119 .)" (*Id.* at pp. 1071–1072.)

"Inherent in an arbitration agreement is a waiver of trial by jury—a waiver that is not precluded by the Constitution or [section 631 of] the Code of Civil Procedure. (See *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 712–714 [131 Cal.Rptr. 882, 552 P.2d 1178], construing Cal. Const., art. I, § 16, and Code Civ. Proc., § 631, subd. (a).)"[2] (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1117, fn. 7 [88 Cal.Rptr.2d 664].) In *Madden*, the Supreme Court observed: "When parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of, the judicial—a forum in which, as they well know, disputes are not resolved by juries." (*Madden v. Kaiser Foundation Hospitals, supra*, 17 Cal.3d at p. 714.)

Section 1942.1, which was enacted in 1970 (Stats. 1970, ch. 1280, § 4, p. 2316) as part of a statutory scheme imposing stricter standards of "tenantability" (see § 1941.1; *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 518

---

[2] "[Code of Civil Procedure] [s]ection 631 ... presupposes a pending action, and relates only to the manner in which a party to such action can waive his right to demand a jury trial instead of a court trial. It does not purport to prevent parties from avoiding jury trial by not submitting their controversy to a court of law in the first instance. Indeed it has always been understood without question that parties could eschew jury trial either by settling the underlying controversy, or by agreeing to a method of resolving that controversy, such as arbitration, which does not invoke a judicial forum. Consequently when the Legislature enacted the specific language of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) to govern the enforcement of arbitration agreements, it did not require that such agreements conform to section 631." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 713 [131 Cal.Rptr. 882, 552 P.2d 1178].)

[143 Cal.Rptr. 247, 573 P.2d 465]), permits arbitration of "tenantability" disputes. "The lessor and lessee may, if an agreement is in writing, set forth the provisions of Sections 1941 to 1942.1, inclusive, and provide that any controversy relating to a condition of the premises claimed to make them untenantable may by application of either party be submitted to arbitration, pursuant to the provisions of Title 9 (commencing with Section 1280), Part 3 of the Code of Civil Procedure, and that the costs of such arbitration shall be apportioned by the arbitrator between the parties." (§ 1942.1.) This express authorization of arbitration in regard to "tenantability" follows a provision in section 1942.1 generally rendering void as against public policy "[a]ny agreement by a lessee of a dwelling waiving or modifying his rights under Section 1941 or 1942," which set forth a lessor's duty to repair untenantable premises and a tenant's remedy to repair and deduct, respectively.[3]

Subdivision (a) of section 1953, which, as Senate Bill No. 314 was enacted in 1975 (Stats. 1975, ch. 302, § 1, p. 749), provides that provisions in residential leases whereby a tenant agrees to modify or waive certain specified rights are "void as contrary to public policy." Among the rights so protected are a tenant's "procedural rights in litigation in any action involving his rights and obligations as a tenant."[4] (§ 1953, subd. (a)(4).)

The purpose of Senate Bill No. 314, as amended March 6, 1975, was stated to be to "[r]ender unenforceable any waiver of certain statutory tenants' rights, and limit the enforceability of waivers of other such rights" and to "[l]imit the landlord's right of access to rented or leased dwellings." (Sen. Com. on Judiciary, Digest of Sen. Bill No. 314 (1975–1976 Reg. Sess.) as amended March 6.) The Assembly Third Reading of Senate Bill No. 314, as amended June 25, 1975, indicates that "[t]he bill adds five statutory rights which a tenant cannot be required to waive by a landlord," including the "[p]rocedural rights of tenant in [a] court case." It comments that the bill "[p]rohibits basic rights given to tenants by law from being waived by tenant (under pressure of landlord)."

---

[3] However, the statute expressly permits the lessor and lessee to "agree that the lessee shall undertake to improve, repair or maintain all or stipulated portions of the dwelling as part of the consideration for rental." (§ 1942.1.)

[4] The other nonwaivable tenant right's include: "(1) His rights or remedies under Section 1950.5 or 1954. [¶] (2) His right to assert a cause of action against the lessor which may arise in the future. [¶] (3) His right to a notice or hearing required by law.... [¶] (5) His right to have the landlord exercise a duty of care to prevent personal injury or personal property damage where that duty is imposed by law." (§ 1953, subd. (a).) Subdivision (b) of section 1953 additionally provides in part: "(b) Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive a statutory right, where the modification or waiver is not void under subdivision (a) or under Section 1942.1, 1942.5, or 1954, shall be void as contrary to public policy unless the lease or rental agreement is presented to the lessee before he takes actual possession of the premises."

An enrolled bill report from the Department of Housing and Community Development on Senate Bill No. 314, dated August 13, 1975, stated that the bill would "declare void any modification or waiver of a tenant's rights regarding … procedural rights in litigation." It recommended that the Governor sign the bill because it "would help prevent the unknowing signing away of valuable rights by a tenant who may not fully understand a lease or rental agreement."

An enrolled bill report from the Department of Consumer Affairs on Senate Bill No. 314 stated that the bill would "specifically preclude the waiver by a tenant of his rights … to procedural safeguards in litigation with landlord …." It indicated that the bill was "necessary to protect tenants who generally find themselves in an inferior bargaining position …."

C. *Effect of Civil Code Section 1953, Subdivision (a)(4)*

Rutter Group practice guides have interpreted section 1953, subdivision (a)(4), as generally precluding agreements in residential leases to arbitrate landlord-tenant disputes except as provided by section 1942.1 in regard to "tenantability" disputes. (See Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2002), ¶ 7.91, p. 7–23 [under Civil Code section 1953 "residential rental agreements cannot force tenants to waive a jury trial in favor of binding arbitration."]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2002), ¶¶ 5:76.11, 5:76.12, p. 5–40 ["landlord cannot compel tenants to waive a jury trial in favor of binding arbitration"].)

We recognize that, despite the strong public policy favoring arbitration agreements, the California Arbitration Act "does not prevent our Legislature from selectively prohibiting arbitration in certain areas." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th 83, 98.) " 'The unsuitability of a statutory claim for arbitration turns on [legislative] intent, which can be discovered in the text of the statute in question, its legislative history or in an " 'inherent conflict' between arbitration and the [statute's] underlying purposes." ' [Citation.]" (*Ibid.*)

Our close review of the statutory language and the legislative history of section 1953 did not disclose any specific legislative intent with regard to arbitration. In fact, the legislative history of section 1953 contains no mention of arbitration and no mention of section 1942.1. However, running throughout the legislative history is a profound concern with the generally weaker bargaining position of tenants as compared to landlords and leverage a landlord may exert by making the availability of rental housing contingent upon the waiver of rights.

We note that section 1953, subdivision (a)(4), precludes a residential lease agreement from including any modification or waiver of a tenant's

"procedural rights in litigation in any action involving his rights and obligations *as a tenant*." (Italics added.) Thus, for example, the tenant cannot waive in advance, in a residential lease agreement, the right to conduct discovery and to have a jury trial in any affirmative action against the landlord that involves the tenant's rights or obligations.[5] (See Cal. Landlord-Tenant Practice (Cont. Ed. Bar 2d ed. 2002) § 1.30, p. 53.) Inherent in an arbitration agreement is a waiver of any right to jury trial. (*Lagatree v. Luce, Forward, Hamilton & Scripps, supra*, 74 Cal.App.4th at p. 1117, fn. 7.)

■ However, nothing in section 1953 precludes a tenant of residential premises and the tenant's landlord from entering into a separate agreement to arbitrate that is entirely independent of any lease agreement. Certainly, section 1942.1 expressly authorizes a written agreement to arbitrate controversies "relating to a condition of the premises claimed to make them untenantable." We think that the most reasonable interpretation of section 1953, subdivision (a)(4), is that it establishes the general rule that a tenant of residential premises cannot validly agree, *in a residential lease agreement*, to binding arbitration to resolve disputes regarding his or her rights and obligations as a tenant.[6]

## D. *Unconscionability*

Even if we had come to a contrary conclusion regarding section 1953, we would conclude that the issue of unconscionability must be resolved against appellants. Appellants argue that the arbitration clause was neutral, applying equally to both landlord and tenants in regard to personal injury disputes arising from the condition of the leased premises.

In *Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th 83, the California Supreme Court considered an employment arbitration agreement and concluded, among other things, that it was unconscionably unilateral. (*Id.* at pp. 91, 120–121.) The employee agreed as follows: " 'I

---

[5] As indicated in footnote 4 above, a tenant may not validly waive any future cause of action against a lessor or any legally required hearing or notice (§ 1953, subd. (a)(2), (3)). "Presumably, [subdivision (a)(3) of section 1953] prohibits the tenant from waiving the right to service of legally required notice when the landlord terminates the tenancy ... or to eviction by legal process...." (Cal. Landlord-Tenant Practice (Cont. Ed. Bar 2nd ed. 2002) § 1.30, p. 53.)

[6] We need not resolve here whether section 1942.1 establishes an exception to section 1953, subdivision (a)(4), so that a written residential rental agreement may validly provide for mandatory binding arbitration of "tenantability" disputes or whether section 1953 controls residential lease agreements and section 1942.1 merely makes clear written arbitration agreements regarding "tenantability" disputes are not void as against public policy under that section but are permissible as otherwise permitted by law. In any event, the arbitration provision at issue here was not so narrow in scope and did not "set forth the provisions of Sections 1941 to 1942.1, inclusive." (§ 1942.1.)

agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. or any successor or replacement statutes. I and Employer further expressly agree that in any such arbitration, my exclusive remedies for violation of the terms, conditions or covenants of employment shall be limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award. I understand that I shall not be entitled to any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief." (*Id.* at p. 92.)

 The court concluded, among other things, that a "modicum of bilaterality" was required in an arbitration agreement. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 117.) It stated: "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope,... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (*Id.* at p. 118.) One form of unconscionability "is an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." (*Id.* at p. 119.)

The court reasoned: "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences. The arbitration agreement in this case lacks mutuality in this sense because it requires the arbitration of employee—but not employer—claims arising out of a wrongful termination. An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 120.) The court also noted that the employee's damages were "limited to the amount of backpay lost up until the time of arbitration" while "[t]he employer, on the other hand, is bound by no comparable limitation should it pursue a claim against its employees. " (*Id.* at p. 121.)

 Here, the reality is that personal injury claims arising from the condition of the leased premises are largely, if not exclusively, tenant claims. Buried in the small print, the arbitration clause makes those claims subject to

the limitation that the demand for arbitration had to be made in writing within 180 days after the claim arose. In addition, all administrative fees and costs had to "be advanced prior to the arbitration." There was no opportunity in the printed form lease for the tenants to decline the provision, such as by not initialing it. We conclude that the arbitration clause lacked sufficient "bilaterality" and was unconscionable.

### E. *Disposition*

The judgment is affirmed. Appellants shall bear costs on appeal.

Rushing, P. J., and Premo, J., concurred.