Filed 6/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ADRIAN HARRIS et al., | 2d Civil No. B293290 |
| Plaintiffs and Appellants, | (Super. Ct. No. 56-2015-00472965-CU-NP-VTA) |
| v. | (Ventura County) |
| UNIVERSITY VILLAGE THOUSAND OAKS, CCRC, LLC, et al., | |
| Defendants and Respondents. | |

Public policy prohibits arbitration agreements in residential lease or rental agreements. (Civ. Code, § 1953, subd. (a)(4).) The question presented here is whether this prohibition applies to tenancy provisions in a continuing care retirement community. We hold that it does.

Five residents of University Village Thousand Oaks appeal from a judgment confirming a binding arbitration award against them. (Code Civ. Proc., §§ 904.1, subd. (a)(1), 1294, subd. (d).) Adrian Harris, Sonya Harris, David Clark, Jennifer Andrews Clark and Robert James (collectively, appellants) were

residents of University Village Thousand Oaks.[1]  Respondents are:  University Village Thousand Oaks, CCRC, LLC; Life Care Services, LLC; Continuing Life, LLC; Ryan Exline, executive director of University Village Thousand Oaks; and Warren Spieker, chair and managing partner of Continuing Life (collectively, UVTO).  Michael South, University Village Thousand Oaks's former director of security, was named in the complaint but he was not included in the arbitration proceedings and is not a party to this appeal.

Appellants claim the trial court erred when it ordered their dispute to arbitration because the arbitration agreements between the parties are void as contrary to public policy, and because arbitration without an essential party created the possibility of "conflicting rulings on a common issue of law or fact."  (Code Civ. Proc., § 1281.2, subds. (c) & (d).)  Appellants claim the arbitrator:  (1) exceeded his authority by failing to enforce statutory protections for elders, (2) failed to consider or resolve necessary issues, and (3) refused to hear material evidence.  Appellants also claim UVTO falsified, destroyed and withheld evidence.  We conclude the agreements compelling arbitration arising from or related to the tenancy provisions of the continuing care contracts are void.  We reverse and remand for trial.

FACTUAL AND PROCEDURAL HISTORY

UVTO is a continuing care retirement community. Its contracts are governed by the statutory provisions for

---

[1] James was not a party to the civil complaint but joined in the arbitration.  James died after the arbitration award but his personal representative authorized the appeal on his behalf. (Welf. & Inst. Code, § 15657.3.)

2

continuing care contracts.  (Health & Saf. Code, § 1770 et seq.)
The continuing care contracts here state that the residents' fees
"shall be deemed payment for your residence, care and services."
The contracts include "a right to live in" a specified "[living] unit,"
with "initial and continued residence" in the unit.  Residents pay
a monthly fee based on the type of residential living unit.  One
meal per day is included.  If residents request to move to another
unit, they must "pay the Monthly Fee applicable to the new unit."
If residents require care that cannot be provided in their units,
they are transferred to an assisted living unit, with the monthly
fee adjusted for two additional meals per day.  In the contracts,
appellants agreed to binding arbitration for "any and all claims
and disputes arising from or related to the Agreement or to your
residency, care or services at University Village."

Appellants sued UVTO, alleging it made false
representations regarding facility security, the amount of future
increases in monthly fees, and whether monthly fees included the
cost to charge electric vehicles.  The complaint alleged causes of
action for conversion, negligence per se, negligence, intentional
and negligent infliction of emotional distress, fraudulent and
negligent misrepresentation, false advertising, unfair
competition, elder abuse and declaratory relief.

The trial court ordered arbitration of appellants'
claims, over their objection.  The court found inapplicable the
statutory prohibition of arbitration clauses in dwelling lease or
rental agreements (Civ. Code, § 1953, subd. (a)(4)) because the
agreements are "not standard residential lease agreements."

After arbitration, the arbitrator issued an award for
UVTO on all causes of action.  The trial court confirmed the
award, and denied appellants' motion to vacate the award.

## DISCUSSION

### *Statutory preclusion*

Whether an arbitration agreement is precluded by statute is an issue of law we review de novo. (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 12.)

Civil Code section 1953, subdivision (a)(4), voids as contrary to public policy the waiver of procedural litigation rights in a dwelling lease or rental agreement. "Inherent in an arbitration agreement is a waiver of any right to a jury trial." (*Jaramillo v. JH Real Estate Partners, Inc.* (2003) 111 Cal.App.4th 394, 404 (*Jaramillo*).) Accordingly, Civil Code section 1953, subdivision (a)(4), "establishes the general rule that a tenant of residential premises cannot validly agree, *in a residential lease agreement*, to binding arbitration to resolve disputes regarding [their] rights and obligations as a tenant." (*Jaramillo*, at p. 404, original italics.)

When the Legislature declares conduct to be contrary to public policy, the rights provided are unwaivable. (Civ. Code, § 3513; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 101 [waiver of California Fair Employment and Housing Act remedies contrary to public policy]; *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 8-10 [statutory attorney's fees and costs for elder abuse unwaivable].) Rights established for a public purpose cannot be waived through an arbitration agreement before a dispute arises. (*Armendariz*, at p. 101; *Bickel*, at p. 8.)

In determining whether Civil Code section 1953 applies to continuing care contracts, we first examine the plain language of the statute, "giving the words their usual, ordinary meaning." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) "The

4

language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.]" (*Ibid.*) We may look to legislative history to confirm a plain-meaning construction. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046.)

*Plain meaning*

Civil Code section 1953, subdivision (a), states, "Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive any of the following rights shall be void as contrary to public policy: [¶] . . . [¶] (4) [Their] procedural rights in litigation in any action involving [their] rights and obligations as a tenant."

The chapter that includes Civil Code section 1953 applies to "all persons who hire dwelling units located within this state including tenants, lessees, boarders, lodgers, and others, however denominated." (Civ. Code, § 1940, subd. (a).) "'Dwelling unit' means a structure or the part of a structure that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household." (Civ. Code, § 1940, subd. (c).)

The plain language of Civil Code sections 1940 and 1953 applies to the continuing care contracts here because the fees paid by appellants include payment for the right to live in a residence. Appellants are thus "persons who hire dwelling units." (Civ. Code, § 1940, subd. (a).) Thus, the protections for "boarders" and "lodgers" (Civ. Code, § 1940, subd. (a)) apply to the "board, or lodging" portions of continuing care contracts (Health & Saf. Code, § 1771, subd. (m)(1)). Because the allegations in the complaint here include claimed violations of

5

"rights and obligations as a tenant" (Civ. Code, § 1953, subd. (a)(4)), the arbitration agreements are void.

*Statutory schemes*

Continuing care contracts are different in some respects from typical residential rental agreements. But the differences do not preclude protection of the residents here, pursuant to Civil Code section 1953.

Continuing care retirement communities typically provide care to elderly residents for the duration of their lives in return for an entrance fee, periodic charges, or both. (Health & Saf. Code, § 1771, subds. (c)(8), (9) & (e)(1), (3).) Although appellants paid UVTO an entrance fee, the UVTO contracts did not provide the residents with any equity interest in the property. (Health & Saf. Code, §§ 1771, subd. (e)(5), 1788, subd. (a)(25); see Health & Saf. Code, §§ 1788.2, 1775, subd. (b).) The periodic charges paid by appellants included a "'[m]onthly care fee,'" defined by statute as "the fee . . . for current accommodations and services, including care, board, or lodging." (Health & Saf. Code, § 1771, subd. (m)(1).)

Appellants lived in independent living units and not the adjacent assisted living units. Their contracts included services such as transportation to medical appointments and shopping areas, assistance in gaining access to supportive services, and healthcare services, "for as long as you reside in your Unit." (See Health & Saf. Code, § 1788, subd. (a)(8), (9).) But these services do not negate the portion of their payments to "hire dwelling units" (Civ. Code, § 1940) or for "accommodations . . . including . . . board, or lodging" (Health & Saf. Code, § 1771, subd. (m)(1)).

6

The statutes regarding continuing care contracts prevail over *conflicting* statutes regarding the sale or hire of real property.  (Health & Saf. Code, § 1775, subd. (a).)  But there is no conflict with the protections of Civil Code section 1953.  While continuing care contract statutes contain a list of residents' rights (Health & Saf. Code, § 1771.7), nothing states that this list is exclusive.  To the contrary, subdivision (a) of section 1771.7 of the Health and Safety Code provides, "No resident of a continuing care retirement community shall be deprived of any civil or legal right, benefit, or privilege guaranteed by law, by the California Constitution, or by the United States Constitution, solely by reason of status as a resident of a community."  Similarly, Health and Safety Code sections 1787 and 1788 list requirements for continuing care contracts, but do not provide that these requirements exclude the benefits afforded by other statutes.

UVTO's reliance on *Lewis Operating Corp. v. Superior Court* (2011) 200 Cal.App.4th 940 is misplaced.  There, the court considered a different protection in Civil Code section 1953, subdivision (a)(5), which prohibits waiver of the landlord's duty of care.  The court held that "Civil Code section 1953 is designed to protect a tenant's basic, essential need for shelter" and did not prohibit a waiver of claims regarding recreational use of a fitness facility on the premises that "was in no way critical" to the need for shelter.  (*Lewis Operating Corp.*, at p. 948.)  In contrast, the arbitration agreements here were applied to claims dealing with the housing portion of the contracts, i.e., increases in monthly fees, whether the charges for utilities included electricity to charge vehicles, and failure to provide promised building and grounds security.

7

UVTO cites two cases involving arbitration clauses in "Residential Care Facilities for the Elderly," of which continuing care retirement communities are a subset. (Health & Saf. Code, §§ 1569, 1771.5.) Neither case concludes that predispute arbitration agreements are permitted. In *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219, the court held that the party seeking arbitration did not have the initial burden to authenticate the arbitration agreement, and remanded "to permit the court to consider the other objections raised to the enforcement of the agreement." In *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 256, the court held that the patient's daughter had authority to enter arbitration agreements on her behalf, and remanded to reconsider the petition to compel arbitration. Neither case involves the issue presented here. "Cases are not authority for propositions not considered therein." (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 614.)

We conclude the statutory scheme for continuing care residential communities does not conflict with the arbitration provisions of Civil Code section 1953.

*Legislative intent*

Our review of the legislative history confirms our plain-meaning construction of Civil Code section 1953.

Civil Code section 1953 was enacted because it "'would help prevent the unknowing signing away of valuable rights by a tenant who may not fully understand a lease or rental agreement,'" and is "'necessary to protect tenants who generally find themselves in an inferior bargaining position.'" (*Jaramillo*, *supra*, 111 Cal.App.4th at p. 403.) These purposes clearly apply

8

to elderly individuals who reside in a continuing care retirement community.

The chapter that includes Civil Code section 1953 has been construed broadly to protect the rights of tenants. For example, in *Rich v. Schwab* (1998) 63 Cal.App.4th 803, 814, the court interpreted Civil Code section 1942.5, which prohibits retaliatory rent increases, to apply to persons who lease mobilehome park spaces upon which the mobilehomes they own are placed. The court relied on Civil Code section 1940, subdivision (d), which provides, "Nothing in this section shall be construed to limit the application of any provision of this chapter to tenancy in a dwelling unit unless the provision is so limited by its specific terms." The court interpreted this provision to apply Civil Code section 1940 to mobilehome space leases, and not just leases for dwelling units. (*Rich*, at pp. 812-813.) The court relied on the legislative intent to protect mobilehome owners "'because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation.'" (*Id*. at p. 813.) The court concluded that the vulnerability of mobilehome owners entitled them to "more, rather than less, protection than other lessees." (*Id*. at p. 814.)

Elders entering continuing care contracts are entitled to the same protection as mobilehome owners. Both groups face significant economic barriers to relocating. The Legislature recognizes that "elderly residents often . . . expend a significant portion of their savings in order to purchase care in a continuing care retirement community," and that there is a need "to protect the rights of the elderly." (Health & Saf. Code, §§ 1770, subd. (b), 1776.)

9

Moreover, the continuing care contract statutes "shall be liberally construed for the protection of persons attempting to obtain or receiving continuing care." (Health & Saf. Code, § 1775, subd. (e).) To deny residents of a continuing care retirement community the protection given others who contract for lodging would be inconsistent with this express policy. The legislative purposes of both the landlord-tenant laws and the continuing care contract laws are best served by applying the arbitration prohibition to the housing component of continuing care contracts.

*Conclusion*

Based on our examination of the statutes, the statutory schemes, and the legislative intent, we conclude Civil Code section 1953 prohibits enforcement of a predispute arbitration provision for disputes arising from or related to the tenancy provisions of a continuing care contract.

Because we conclude that arbitration should not have been ordered, we need not resolve the other issues raised on appeal.[2]

---

[2] We grant appellants' request to take judicial notice of the Senate Health and Human Services Committee Analysis of Senate Bill No. 2077 (1999-2000 Reg. Sess.), amending Health and Safety Code section 1770 et seq. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 279, fn. 9.) We deny appellants' request for judicial notice of documents received from the Department of Social Services after the trial court entered judgment because our disposition renders those documents irrelevant. (*Id.* at p. 295, fn. 21; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

## DISPOSITION

The judgment is reversed.  The case is remanded for trial.  Appellants shall recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Rocky Baio and Matthew Guasco, Judges

Superior Court County of Ventura

_____

Law Office of Glenn A. Harris and Glenn A. Harris, for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Brittany B. Sutton and George E. Nowotny, for Defendants and Respondents.