Filed 8/21/24  Barrelet v. Liu CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLAISE BARRELET, as Trustee, etc., Plaintiff and Respondent, v. WEI LIU, Defendant and Appellant. | D083088 (Super. Ct. No. 37-2022-00043748-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Neufeld Marks and Paul S. Marks for Defendant and Appellant.

Jenny Li, Neil Kalin and Joseph Yoon, for California Association of Realtors, as Amicus Curiae on behalf of Defendant and Appellant.

Scudi & Ayers and J. Ray Ayers for Plaintiff and Respondent.

Wei Liu appeals from an order denying her motion to compel arbitration.  Liu purchased a private residential property from Blaise Barrelet, as Trustee of the Barrelet Family Trust (Barrelet) and, as part of the transaction, agreed to lease the property back to Barrelet for one month. In connection with the sale, the parties executed a Residential Purchase

Agreement (the purchase agreement) and a Residential Lease After Sale (the lease agreement).[1]  Pursuant to the lease agreement, Barrelet provided a $40,000 security deposit to be held in escrow.  When a dispute arose over the condition of the property, Liu refused to return the deposit.  Barrelet filed a complaint for breach of contract, conversion, and wrongful retention of the security deposit in violation of Civil Code section 1950.5.[2]  Liu moved to compel arbitration based on a clause in the purchase agreement.  The trial court concluded the lease agreement was subject to California substantive law, despite a clause in the purchase agreement indicating the parties agreed to follow the procedural laws set forth in the Federal Arbitration Act (the FAA).  The trial court further concluded that section 1953, subdivision (a)(4) voided any agreement between the parties to arbitrate tenancy related claims.  Liu asserts this was error.  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, Barrelet and Liu entered into the purchase agreement and lease agreement.  Per the written agreements, Liu agreed to purchase a residential property from Barrelet for $9.5 million, with a loan amount of $5.7 million and the balance due at escrow.  The lease agreement provided that Liu agreed to lease back the property to Barrelet for 30 days after the close of escrow.  The lease agreement lists the rent amount as "free," but states Barrelet agreed to pay $40,000 through escrow as a security deposit.  It states further that the security deposit could be used to repair damage

---

[1]  Both agreements were executed using standard forms provided by the California Association of Realtors.  We have read and considered the amicus curiae brief submitted by the California Association of Realtors and Barrelet's response.

[2]  Further unspecified statutory references are to the Civil Code.

caused by Barrelet or his guests; to clean the property, if needed, upon termination of the lease; or to replace or return personal property or appurtenances.

The lease expired on May 18, 2022, and Barrelet vacated the property. A dispute arose shortly thereafter concerning the condition of the property, and Liu withheld the return of Barrelet's security deposit as a result. Barrelet sent a written demand through counsel for return of the security deposit, and the parties participated in mediation but were unable to resolve the dispute. On October 31, 2022, Barrelet filed a complaint against Liu asserting breach of contract; breach of implied covenant of good faith and fair dealing; conversion; and failure to return a security deposit in violation of section 1950.5. He asserted Liu had not provided an itemization of deductions or any evidence she was withholding any portion of the deposit for any permissible reason under section 1950.5, subdivision (b).[3]

Liu filed a motion to compel arbitration in response. She relied on an arbitration clause in the purchase agreement and asserted the purchase and lease agreements were executed together, as part of a single transaction. She explained that she was pursuing arbitration regarding her claims as to the condition of the property, but Barrelet's counsel had indicated the claims in his complaint were not subject to arbitration. Liu agreed that the assertion was "not facially absurd" since the lease agreement did not contain an arbitration provision, but maintained that the arbitration provision in the purchase agreement applied to the lease. Liu's counsel provided a

---

[3]    Section 1950.5 "applies to security for a rental agreement for residential property that is used as the dwelling of the tenant," to be used as specified in subdivision (b).

3

declaration in support of the motion and attached copies of the purchase and lease agreements.

The purchase agreement states, in paragraph 27, "Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California." Paragraph 30 of the purchase agreement is titled "MEDIATION," and states, in relevant part, "The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action."

Paragraph 31 of the purchase agreement is titled "ARBITRATION OF DISPUTES." It has five subsections, A through E, and appears in bold face print with a box around it. Both parties initialed inside the box. Subsection A states, in relevant part: "The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. . . . Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure."

The lease agreement contains a mediation clause, like the one in the purchase agreement, but does not contain any language concerning arbitration.

Barrelet opposed Liu's motion to compel arbitration. He argued the arbitration provision in the purchase agreement did not apply because

4

agreements to arbitrate tenancy rights are void as against public policy under section 1953, subdivision (a)(4). In the alternative, he asserted the purchase and lease agreements were separate agreements and there is nothing in the lease agreement requiring arbitration.

After hearing argument, the trial court denied Liu's motion to compel arbitration. The court found that the arbitration provision in the purchase agreement applied to the lease but that the provision expressly stated the agreement to arbitrate would be governed by the *procedural* rules of the FAA. The court agreed with Barrelet that both agreements were governed by California substantive law, and that section 1953, subdivision (a)(4) invalidated the arbitration clause to the extent it purported to require arbitration of tenancy related claims.

Liu filed a timely notice of appeal.

## DISCUSSION

Where, as here, there is no conflicting extrinsic evidence, we review both the trial court's interpretation of an arbitration agreement and the question of whether it is precluded by a statute independently, under a de novo standard of review. (See *Harris v. University Village Thousand Oaks CCRC LLC* (2020) 49 Cal.App.5th 847, 852 (*Harris*); *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

We turn first to the interpretation of the written contract. "Our objective in construction of the language used in the contract is to determine and to effectuate the intention of the parties. [Citation.] It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.) We are cognizant that under both California and federal law, there is a "strong public policy in favor of arbitration as an expeditious and cost-

5

effective way of resolving disputes." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843; see also *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [recognizing federal and state public policies in favor of arbitration].) At the same time, it is essential to the proper operation of that policy that " '[t]he scope of arbitration is . . . a matter of agreement between the parties.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8.)

The federal policy favoring arbitration is codified by the FAA and the California policy is codified in the California Arbitration Act (CAA). Because they share common origins, the FAA and CAA are similar in many respects. (See *Cable Connections, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1343.) "Section 2 of the FAA, declaring the enforceability of arbitration agreements, 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,' " and typically governs contracts involving interstate commerce. (*Cable Connections,* at pp. 1350-1351.) Sections 3, 4, 10 and 11 of the FAA are considered procedural provisions, and generally do not apply in state court, unless the parties expressly agree otherwise. (*Cable Connections,* at p. 1351; *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345.)

Here, the trial court found the parties expressly agreed that the *procedural* rules of the FAA, and not the CAA, would govern the agreement to arbitrate. They also agreed that California law would govern, more generally, "[e]xcept as otherwise agreed." Thus, as the trial court concluded, the plain language of the agreement indicates the parties intended for *substantive* California law to govern in general and for federal *procedural* law as set forth in the FAA to govern in the context of the agreement to arbitrate.

6

On appeal, Liu asserts this was error and that the substantive rules of the FAA also govern the agreement to arbitrate. She states the FAA applies to contracts that involve interstate commerce *and* where the contract itself states that the FAA applies, but she does not argue the FAA applies based on the language of the contract at issue here.[4] Rather, Liu asserts the FAA governs because the transaction involves interstate commerce. The authority she relies upon does not support her position.

In *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265 the United States Supreme Court interpreted section 2 of the FAA broadly to "reach expansively as coinciding with that of the Commerce Clause." (*Allied-Bruce,* at p. 274.) There, the parties agreed that materials used in the transaction came from out of state, and therefore the contract involved interstate commerce. (*Id.* at p. 282.) The contract at issue here concerned only the sale and one month lease back of a single-family residence between two California residents in the state of California.

In *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, the court applied the broad language in *Dobson* to conclude that a residential purchase involved commerce within the meaning of section 2 of the FAA, but that transaction involved a loan from the Federal Housing Administration, making it subject to federal litigation. (*Hedges,* at p. 586.) In reaching that conclusion, the court noted, "No doubt the connection with interstate commerce in this case is not as strong as in others." (*Id.* at p. 587.) Likewise,

---

[4]    We note that in her motion to compel arbitration, Liu argued that the FAA applied based on the language in the purchase agreement. The trial court stated, in its written decision, "[Liu's] arguments do not recognize the distinction between the procedural provisions under the FAA and the substantive provisions." Liu does not address this point on appeal.

in *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, the Court found a debt restructuring agreement—although executed between parties that were both in Alabama—involved interstate commerce because, among other reasons, "Alafabco engaged in business throughout the southeastern United States using substantial loans from the bank that were renegotiated and redocumented in the debt-restructuring agreements." (*Id.* at p. 57.)

Liu argues the purchase agreement here specifies a loan amount and asserts that any loan must necessarily impact commerce. Other than that general statement in the purchase agreement, there is no evidence in the record before us on appeal specifying the type of loan Liu obtained, or even confirming that she did in fact obtain a loan. As the party moving to compel arbitration and the appellant, Liu had, and has, the burden to establish the existence of a valid contract to arbitrate and error on appeal. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) In the absence of any information regarding the alleged loan involved in the transaction, Liu has not met that burden here.

Liu also relies on an unpublished federal district court order denying a motion for reconsideration concerning arbitration in which the court relied on *Russell v. United States* (1985) 471 U.S. 858 for the proposition that " '[r]ental of residential real estate is "unquestionably" an activity that affects interstate commerce.' " (*Payan v. Owen Village, LLC* (Sept. 20, 2022) 2022 WL 17216827 at *1.) *Russell* is a criminal case in which the defendant wrongly asserted an apartment building that he owned and treated as a business was not a commercial property. (*Russell, supra,* 471 U.S. at p. 859.) It is not applicable here and it does not stand for the proposition that *any* rental of residential property necessarily involves interstate commerce under

the FAA. If that were the case, the FAA would *always* preempt California law regarding tenancy but even the court in *Payan* acknowledged that California law can sometimes apply to tenants of residential premises. (*Payan, supra,* 2022 WL 17216827 at *1.) In addition, like *Russell*, *Payan* concerned a commercial apartment building, not an individual lease of a single-family residence. (See *Payan v. Owen Village, LLC* (July 12, 2022) 2022 WL 18278603 at *1.)

For the foregoing reasons, we agree with the trial court's conclusion that the arbitration agreement at issue here is governed by the *procedural* rules of the FAA, and by substantive California state law. We turn next to the question of whether California substantive law, and specifically, section 1953, precludes arbitration of Barrelet's tenancy related claims.

As relevant here, section 1953, subdivision (a)(4)[5] "voids as contrary to public policy the waiver of procedural litigation rights in a dwelling lease or rental agreement," and " 'establishes the general rule that a tenant of residential premises cannot validly agree, *in a residential lease agreement*, to binding arbitration to resolve disputes regarding [their] rights and obligations as a tenant.' " (*Harris, supra,* 49 Cal.App.5th at p. 852.) "Enacted in 1975 and applying to all leases and rental agreements executed on or after January 1, 1976, . . . section 1953 was essentially a codification of California common law, and its application in general to residential leases is

---

[5] Section 1953, subdivision (a)(4) provides:

> "(a) Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive any of the following rights shall be void as contrary to public policy:

> > "(4) His procedural rights in litigation in any action involving his rights and obligations as a tenant."

beyond dispute." (*Lewis Operating Corp. v. Superior Court* (2011) 200 Cal.App.4th 940, 944.) Thus, an agreement for binding arbitration in a lease agreement is void as against public policy.

"[D]espite the strong public policy favoring arbitration agreements, the California Arbitration Act 'does not prevent our Legislature from selectively prohibiting arbitration in certain areas." (*Jaramillo v. JH Real Estate Partners, Inc.* (2003) 111 Cal.App.4th 394, 403.) Section 1953, subdivision (a)(4) "precludes a residential lease agreement from including any modification or waiver of a tenant's 'procedural rights in litigation in any action involving his rights and obligations *as a tenant.*' " (*Jaramillo,* at pp. 403–404.) Therefore, the "tenant cannot waive in advance, in a residential lease agreement, the right to conduct discovery and to have a jury trial in any affirmative action against the landlord that involves the tenant's rights or obligations." (*Id.* at p. 404.) "Inherent in an arbitration agreement is a waiver of any right to jury trial." (*Ibid.*)

Here, by its terms, the lease agreement is a residential rental agreement and is therefore subject to the provisions of section 1953. It names Liu as "Landlord" and Barrelet as "Tenant" and states that the agreement is for Tenant to "rent" the real property from the "Landlord." It characterizes the payment from escrow as a "security deposit". Further, the lease agreement includes a "Rent Cap and Just Cause Eviction Addendum" which references section 1947.12 and Code of Civil Procedure section 1161 (relating to unlawful detainer procedures between tenants and landlords). The lease agreement specifically provides that:

> "Within 21 Days after Tenant vacates the Premises, Landlord shall:
>
> "(1) Furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for

10

its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and

"(2) Return any remaining portion of the security deposit to Tenant."

Particularly in light of the agreements' choice of California law, it makes little sense that the lease agreement would specifically reference multiple specific tenant protections under California law without also including Barrelet's rights under section 1953.[6]

In short, we see no reason why section 1953 should not apply here. While the parties' dispute as to the property's condition may be subject to the arbitration provision in the purchase agreement, any interpretation that requires Barrelet to arbitrate his rights as a tenant—including most notably his right to the return of his security deposit or an accounting of what was withheld, as asserted in the complaint—is void under California substantive law. (§ 1953, subd. (a)(4).)

Liu asserts that such a conclusion is not in line with the intent of section 1953, which is to protect tenants from unconscionable terms in rental agreements. We disagree. Although it was part of a larger transaction, Barrelet was still a tenant, per the terms of the leaseback provision. He provided a significant security deposit *as a tenant*, not as part of the residential sale transaction, and it appears undisputed that Liu has retained

---

[6]    In their amicus brief, the California Association of Realtors assert a residential lease after sale is not equivalent to a "ordinary" lease, but do not explain what constitutes an "ordinary" lease. Like any other transaction, the terms may vary widely from one lease to another. If parties wish to structure the agreement in a way that does not implicate tenancy laws, they may do so, but here the documents themselves make clear that the lease agreement was in fact a lease.

11

that deposit.  In resolving that specific conflict, Barrelet is as entitled to the protections of California tenancy law as is any other tenant.  Liu provides no authority to the contrary.

## DISPOSITION

The order is affirmed.  Respondent is awarded costs on appeal.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.