Filed 3/5/21  Park Lane Associates, LP v. Alioto CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PARK LANE ASSOCIATES, LP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH ALIOTO et al.,<br><br>    Defendants and Appellants. | A155781<br><br>(City & County of San Francisco<br>Super. Ct. No. CJD-13-647251) |

Defendants Joseph Alioto and Michele Alioto (the Aliotos) appeal an order awarding plaintiff Park Lane Associates, LP (Park Lane) the attorney fees it incurred in a prior appeal of this matter.  We shall affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Initial Trial Court Proceedings**

This is the second time this case has been before us.  The procedural history is set forth in an opinion of a different panel of this division, *Park Lane Associates, LP v. Joseph Alioto et al.* (Jan. 25, 2018, A144383) [nonpub. opn.] (*Park Lane I*).  We need not repeat that history in detail here.  To summarize the pertinent points, the Aliotos lived in an apartment owned by Park Lane.  Park Lane began renovating the penthouse above the Aliotos' apartment in 2012.  The renovations caused noise and dust, the Aliotos' water and electricity were shut off periodically, elevators did not always

1

work, and the building shook. The disruption made it difficult for Joseph Alioto (Alioto), an attorney, to carry out his law business from the apartment.

The Aliotos withheld their rent in February 2013, and Park Lane filed an unlawful detainer action. (*Park Lane Associates, LP v. Joseph Alioto et al.* (Super. Ct. S.F. City & County, 2013, No. CUD-13-644351) [the first unlawful detainer action].) On May 31, 2013, a jury found that Park Lane breached the implied warranty of habitability by substantially interfering with the Aliotos' right to occupy their apartment, and reduced the rent payment for the month of February 2013 from $10,316.52 to $8,284.87. The contractor for the renovation work testified he expected work on the penthouse to be complete by the end of July 2013.

Renovations on the penthouse continued, the Aliotos again withheld their rent payment in November 2013, and Park Lane brought the current case, a second unlawful detainer action. On January 3, 2014, the parties entered into a settlement agreement with a stipulation for entry of future judgment (together, the Agreement). The Aliotos agreed to pay their back rent for November and December 2013 and make future rent payments in a timely manner. In return, Park Lane forgave the Aliotos' arrearage for June 2013 and reduced their rent by $1,000 per month for 11 months, from November 2013 through September 2014.

By that time, the Aliotos had been served with a notice terminating their tenancy pursuant to the Ellis Act, which allows owners of residential property to remove property from the rental market consistent with certain guidelines. (*Danger Panda, LLC v. Launiu* (2017) 10 Cal.App.5th 502, 506–507; Gov. Code, § 7060 et seq.) They requested and received the right to remain as tenants until October 24, 2014, with Park Lane reserving its right to terminate the tenancy earlier pursuant to the Ellis Act and the Aliotos

2

reserving their right to assert defenses to that act, except for the defense of a "decrease in housing services caused by or related to the construction activity."  The Agreement included the following release:  "[F]or the consideration herein, [the Aliotos] shall release and hold [Park Lane] . . . harmless for any inconvenience, decrease in housing services, or distress as a result of or arising out of the building's extensive renovation, improvement, unit rehabilitations, construction, and the like ('construction activity').  This release extends to all past, current, and future construction activity that occurs in or around the building, the [Aliotos' apartment], and/or other units in [the building.]  It is the express intention of this Agreement that the consideration provided to [Park Lane] [*sic*] by [the Aliotos] [*sic*] shall in every way compensate [the Aliotos] . . . from all problems, inconveniences, aggravations, and adverse issues related to the construction activity, and that [the Aliotos] shall thereafter not be entitled to any further rent adjustment, abatement, or award of damages as a result thereof except as allowed by this Agreement.  [The Aliotos] acknowledge that construction activity will continue throughout the duration of [their] tenancy at [their] apartment], and they hereby agree that the consideration provided by this Agreement shall be sufficient to compensate them for any harm, annoyance, loss or diminution of housing services, or lack of quiet use and enjoyment they suffered or will suffer as a result of the past, present, and future construction activity."

The Agreement required Park Lane to file a dismissal without prejudice, but authorized the court to set aside the dismissal upon Park Lane's request for the purpose of enforcing the terms of the agreement.  The parties agreed to stipulated terms for entry of a future judgment in the event of a breach of the settlement agreement, among which, should the court sign

3

"a judgment for restitution" of the premises, the Aliotos waived their right to appeal. The stipulated terms included an attorney fee provision under which the prevailing party in an action to enforce the terms of the Agreement would recover attorney fees and costs. Alioto crossed out a second attorney fee provision included in the copy the Aliotos signed.

Construction work resumed on the penthouse unit in early 2014, and the Aliotos again withheld their rent payment in April 2014. Along with three other tenants of the building, they also filed an independent lawsuit against Park Lane (*Greene et al. v. Park Lane Associates, LP* (Super. Ct. S.F. City & County, 2014, No. CC-14-538688) [the *Greene* action] seeking damages and injunctive relief as a result of the construction work.

Park Lane then moved for an order vacating dismissal of the current action and enforcing the Agreement, contending the Aliotos breached the Agreement by failing to pay their April 2014 rent and by filing the *Greene* action. The Aliotos opposed the motion on the ground they signed the Agreement in the belief construction on the penthouse had been completed. In response, Park Lane submitted a declaration of its agent stating that he had told Alioto in December 2013 that he had just bought the penthouse and intended to move into it in several months after he had work done to reinforce the roof and add a small elevator. The trial court granted Park Lane's request, finding the Aliotos had released all claims from the renovation, including claims related to future construction activity, and that the Aliotos' assumption that there would be no further construction on the penthouse did not qualify as a mistake of fact. The court vacated dismissal of the action and entered judgment pursuant to the terms of the Agreement, but stayed the judgment on condition, inter alia, that the Aliotos reimburse Park Lane for its attorney fees in bringing the motion. After further proceedings,

4

the trial court lifted the stay of the judgment. The Aliotos' appeal in *Park Lane I* concerned these proceedings.

## B. Appeal in *Park Lane I*

In *Park Lane I,* a different panel of this division affirmed the orders the Aliotos challenged, concluding the trial court did not abuse its discretion in vacating dismissal of the action or lifting the stay, and did not err or abuse its discretion in declining to relieve them of their obligation to pay Park Lane's attorney fees.

The Aliotos petitioned for rehearing on the ground, in part, that the settlement agreement was unenforceable as against public policy because it purported to waive the implied covenant of habitability. This court declined to rehear the appeal, but modified a footnote made in the course of rejecting the Aliotos' argument that they did not breach the Agreement by withholding their April 2014 rent (footnote 6).

As modified, footnote 6 of the opinion in *Park Lane I* reads: "In their reply brief, the Aliotos assert a public policy argument, not included in their opening brief, challenging the validity of the settlement's release and, by extension, the validity of the trial court's June 2014 order, by contending any purported waiver of the warranty of habitability was invalid. The Aliotos frame their assertion as a response to one of Park Lane's arguments, characterizing the latter as an assertion that, through the settlement, they waived any claim based on the warranty of habitability. The cited portion of Park Lane's respondent's brief did not mention the warranty of habitability, however; rather, Park Lane there contended that the language of the settlement itself put the Aliotos on notice there would be further construction activity in the building. In our original opinion, we declined to consider the Aliotos' new argument because they waited until their reply brief to raise it

in this appeal, offering no excuse for their delay, and did not sufficiently develop it by citing facts or law. The Aliotos subsequently petitioned for a rehearing, citing *Morey v. Paladini* (1922) 187 Cal. 727, 734, for the proposition that, when one party is seeking to enforce a contract, and 'the court discovers a fact which indicates that the contract is illegal and ought not to be enforced,' it must 'instigate an inquiry,' even if the issue is raised in an appellate reply brief. But that case is easily distinguishable because there a review of 'the plain terms of the contract itself' unavoidably led to the conclusion the parties intended an illegal restraint on trade. (*Id.* at p. 736.) In contrast, here, a review of the contract itself does not compel a conclusion that the Aliotos were waiving the warranty of habitability or that the agreement otherwise was illegal. In their rehearing petition, the Aliotos cite to a declaration they filed in the trial court complaining that the construction created certain disruptions, but they have cited no legal authority compelling the conclusion the disruptions rendered their apartment uninhabitable. Accordingly, we reject their belated assertion that the trial court erred in enforcing their settlement because it was illegal and, therefore, void."[1]

The California Supreme Court denied the Aliotos' petition for review.

### C. Motion for Attorney Fees on Appeal

After the appeal in *Park Lane I*, Park Lane moved for its attorney fees in post-judgment proceedings in the trial court and on appeal, based on the fee provision in the Agreement. Park Lane sought a total fee award of $56,393.50, plus costs. In their opposition, the Aliotos argued the Agreement is void because it waives the implied warranty of habitability and the

---

[1] On March 2, 2018, this division dismissed as moot an appeal in a separate unlawful detainer action between the parties. (*Park Lane Associates, LP v. Alioto et al.*, (Mar. 2, 2018, A145019) [nonpub. opn.].)

6

covenant of quiet enjoyment, and that the fees sought included items outside the scope of the Agreement, which they contended was limited to the fees incurred in " 'bringing [the] enforcement motion' that resulted in the June 9, 2014, Order" and did not authorize fees related to the appeal of that order or any other post-judgment matters.

The trial court granted Park Lane's motion for post-judgment attorney fees, and awarded $44,736.50, after making deductions for entries not related to enforcement of the settlement agreement.[2]  In so doing, the trial court found, citing the order on rehearing of the appeal in *Park Lane I*, that the contract and the attorney fee clause were enforceable, as nothing in the face of the agreement between the parties was illegal or void as against public policy.  This timely appeal ensued.[3]

**DISCUSSION**

## I. Enforceability of Attorney Fee Provision

The Aliotos contend attorney fees are unavailable to Park Lane because the Agreement as a whole is unenforceable as against public policy.

Park Lane argues that all of the Aliotos' claims, including this one, are barred because they waived their right to appeal.  It is well settled that a party may waive the right to appeal, as long as the waiver is clear and

---

[2] At the hearing on the motion, the court stated that the reason it departed from Park Lane's request was "it wasn't quite clear whether some of it was—for example, there was one.  I think it was $400.  $400 to correct a typo or something like that.  That's not enforcement of settlement.  And there were some things like that that the Court went ahead and did."  The court did not itemize the items it disallowed.

[3] We grant the Aliotos' October 15, 2019 request for judicial notice of their reply brief and petition for rehearing in case No. A144383 and the notice of intent to withdraw their apartment from the rental market.  We grant Park Lane's May 28, 2020 request for judicial notice of an order, special verdict form, and judgment in the *Greene* action.

express.  (*Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596, 603 (*Ruiz*); *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 952 (*Guseinov*).)  The Agreement meets that standard.  The Aliotos agreed:  "Should a judgment for restitution be signed by the Court, Defendants expressly waive any right to an appeal or to seek a stay of execution of judgment or eviction for any reason whatsoever, including hardship."  But here, the Aliotos challenge the enforceability of the very agreement that waives their appellate rights.  Rather than treating this challenge as barred by the waiver, we will consider it.

We must first decide whether the decision in *Park Lane I*, which rejected the Aliotos' challenge to the legality of the Agreement, prevents them from again raising this issue.  Park Lane argues the Aliotos' claim is barred by the doctrines of law of the case, claim preclusion (or res judicata), and issue preclusion (or collateral estoppel).  The Aliotos contend, and we agree, that res judicata and collateral estoppel do not apply, so the doctrine under which this question must be decided is law of the case.

Res judicata " 'gives conclusive effect to a former judgment only when the former judgment was in a different action; an earlier ruling in the same action cannot be res judicata, although it may be "law of the case" if an appellate court has determined the issue.' "  (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 770.)  *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180 (*Lennane*) is instructive in a context similar to that before us.  The pertinent question there was the effect of a prior ruling that the prevailing party taxpayers were entitled to attorney fees and costs after prevailing on summary judgment in a tax refund action because, pursuant to section 19717 of the Revenue and Taxation Code, the position of the defendant Franchise Tax Board (FTB) was "not substantially justified."

(*Lennane*, at pp. 1183–1184, italics omitted.) The FTB appealed the ruling on the merits, urging in a footnote that reversal of the judgment would entail reversal of the attorney fee and cost award and that FTB's position was substantially justified in any event. (*Id*. at p. 1184.) The Court of Appeal reversed, and was in turn reversed upon review by the Supreme Court. Neither the opinion in the original appeal nor the Supreme Court's decision mentioned the attorney fee and cost award. (*Id*. at pp. 1184–1185.) On remand, the taxpayers again sought attorney fees, which the trial court denied, finding FTB's position substantially justified. (*Id*. at p. 1185.)

On appeal of the denial of attorney fees, the taxpayers argued the original cost order was res judicata on the issue of substantial justification. (*Lennane*, *supra*, 51 Cal.App.4th at p. 1185.) Our colleagues in Division Two rejected this contention, concluding "[t]he doctrine of res judicata fails because . . . the first ruling was not in a *former* action [citations], a requirement which would also apply should we view the issue as one of 'collateral estoppel' [citation]. This was an earlier ruling in the *same* action." (*Id*. at p. 1185.) Similarly here, the ruling upon which Park Lane seeks to rely, our decision in *Park Lane I*, was in the same action as that now before us. We agree with the Aliotos that res judicata and collateral estoppel do not provide the proper analytical framework for considering the effect of *Park Lane I*.[4]

---

[4] Park Lane notes in passing that nonsuit was granted as to all causes of action brought by Alioto in the *Greene* action, based on the release contained in the Agreement, but it fails to present a reasoned argument that this decision in a separate action bars the issue now before us through claim or issue preclusion. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [undeveloped arguments not supported by argument may be treated as forfeited].)

9

That framework, we conclude, is instead found in the law of the case. This doctrine "dictates that an appellate court's holding, on a rule of law necessary to an opinion, must be adhered to throughout the case's subsequent progress in the trial court and on subsequent appeal, as to questions of law (though not as to questions of fact)." (*City of West Hollywood v. Kihagi* (2017) 16 Cal.App.5th 739, 749; see *People v. Boyer* (2006) 38 Cal.4th 412, 443.) The doctrine does not apply to "arguments that might have been but were not presented and resolved on an earlier appeal." (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1130; see *Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 842 [prior appeal did not establish law of the case on legality of contract where court could not have decided issue on record before it and therefore neither considered nor expressed views on it].) However, it does apply to "questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal." (*Estate of Horman* (1971) 5 Cal.3d 62, 73 (*Horman*).) The rule is " 'one of procedure that prevents parties from seeking reconsideration of an issue already decided absent some significant change in circumstances.' " (*Sargon Enterprises v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505.) Interpreting this rule, the court in *Lennane* noted that no appellate court had actually determined the issue of FTB's "substantial justification," that it seemed "doubtful either [the Court of Appeal or Supreme Court in the prior appeal] appreciated the issue was presented," and that "neither court's opinion acknowledged or expressed any view on the question." (*Lennane, supra*, 51 Cal.App.4th at p. 1186.)

With these principles in mind, we consider the case before us. In their reply brief in *Park Lane I*, the Aliotos argued that "any provision of the Settlement Agreement which purports to release and hold Park Lane

10

harmless from any future claims arising from construction at 1100 Sacramento Street is not binding because a tenant's rights to a tenable and habitable dwelling cannot be waived by agreement."  Dissatisfied with the response to this argument in our original opinion, the Aliotos sought rehearing on the ground that the settlement agreement was invalid because it waived the implied warranty of habitability and that we had a duty to investigate and determine its illegality.  (See *Morey v. Paladini*, *supra*, 187 Cal. at p. 734.)  In our modified opinion, we distinguished *Morey* on the ground the plain terms of the contract there led unavoidably to the conclusion the parties intended an illegal restraint on trade, but the Agreement at issue in this case does not compel a conclusion it "waiv[ed] the warranty of habitability or that the agreement otherwise was illegal."  We further noted the Aliotos had "cited no legal authority compelling the conclusion the disruptions rendered their apartment uninhabitable," and we expressly "reject[ed] [the Aliotos'] belated assertion that the trial court erred in enforcing their settlement because it was illegal and, therefore, void."  Thus, unlike the situation in *Lennane* and *Bovard*, the Aliotos raised and we considered and decided on a full record the issue they now seek to relitigate. In these circumstances, we conclude the doctrine of law of the case is applicable, and the trial court correctly refused to take a position contrary to our earlier opinion.

We reject the Aliotos' analogy to *Kowis v. Howard* (1992) 3 Cal.4th 888, 891, 899, which held that summary denial of a pretrial petition for extraordinary relief does not establish law of the case, in part on the ground that such a result would prevent the losing party from ever having the opportunity to present oral argument on the issue.  Here, although the Aliotos chose not to raise the issue of the legality of the settlement agreement

11

until they submitted their reply brief, they were afforded the full protections of the appellate process. Summary denial of a writ petition "does not decide a 'cause'" (*id.* at p. 897), but in *Park Lane I* this court both heard and decided the Aliotos' challenge to the validity of the agreement.

In support of their position that we have not already ruled on the legal points they raise here, the Aliotos point out that in the current appeal, they not only repeat the argument they made in *Park Lane I* that the settlement agreement violates Civil Code section 1942.1,[5] which bars the waiver of a tenant's rights to a tenantable dwelling, but they assert a second statute under which they claim the agreement violates public policy, to wit, section 1953. As pertinent here, that enactment provides that "[a]ny provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive" certain rights "shall be void as contrary to public policy"; among those rights are the "right to assert a cause of action against the lessor which may arise in the future" and "a statutory right, where the modification or waiver is not void under subdivision (a) or under Section 1942.1, 1942.5, or 1954." (§ 1953, subds. (a)(2) & (b).) The Aliotos claim the Agreement violates these principles because it purports to release claims for "loss or diminution of housing services, or lack of quiet use and enjoyment they suffered or will suffer as a result of the past, present, *and future* construction activity." (Italics added.)

We are not persuaded that this variation on their original legal argument takes this case outside the scope of the law of the case. (See *Yu v. Signer Bank/Virginia* (2002) 103 Cal.App.4th 298, 312, overruled on another ground in *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 646 ["Litigants are not free to continually

---

[5] All undesignated statutory references are to the Civil Code.

reinvent their position on legal issues that have been resolved against them by an appellate court"].)  Both in *Park Lane I* and here, the gravamen of the Aliotos' claim is that the Agreement is void as against public policy because it purported to release Park Lane for future claims caused by the disruptive effects of the continuing construction.  *Park Lane I* rejected the Aliotos' argument "that the trial court erred in enforcing their settlement because it was illegal and, therefore, void," and this determination was "essential to the decision" affirming orders enforcing that very agreement.  (See *Horman*, *supra*, 5 Cal.3d at p. 73.)

The Aliotos point out that the doctrine of law of the case is a discretionary policy, which we need not follow if the result would be unjust. (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 835.)  Thus, the court may "decline[] to adhere to it where its application would result in an unjust decision, e.g., where there has been a manifest misapplication of existing principles resulting in substantial injustice." (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491–492 (*Morohoshi*).)  The Aliotos have not persuaded us that either our original decision or the trial court's refusal to revisit issues resolved in it has worked any such injustice.

Section 1942.1 is part of a statutory scheme imposing standards of " 'tenantability.' " (*Jaramillo v. JH Real Estate Partners, Inc.* (2003) 111 Cal.App.4th 394, 401 (*Jaramillo*).)  As part of that scheme, a dwelling is deemed untenantable if it "substantially lacks" certain characteristics, including effective waterproofing, a hot and cold water supply, electrical lighting maintained in good working order, receptacles for garbage and rubbish, and clean and sanitary building, grounds and appurtenances. (§ 1941.1, subd. (a).)  The Aliotos contend the settlement agreement improperly waives their right to a dwelling with these attributes, citing their

13

complaints about water shutoffs, electrical service disruptions, inoperable service elevator and elevator delays, dust from construction in common areas, and water damage to their ceilings. And, they argue, the Agreement improperly prospectively waived their statutory right to quiet possession and enjoyment of the property in violation of section 1953. (See § 1927; *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1299–1300.)

We are unpersuaded by these arguments. First, when entering into the Agreement in the face of the impending termination of their tenancy under the Ellis Act, the Aliotos acknowledged that the construction about which they had complained would continue, and they agreed the forgiveness of their arrearages and reduction in rent were sufficient to compensate them for the "problems, inconveniences, aggravations, and adverse issues related to the construction activity, . . . past, present, and future." We see no substantial injustice in enforcing that agreement. Certainly, the Aliotos point to nothing that compels the conclusion the construction caused their apartment to "substantially lack[]" the standard characteristics enumerated in section 1941.1 so as to render it untenantable as a matter of law.

Second, we see no substantial injustice in allowing the parties to waive claims in settling their litigation. Although section 1953 prevents tenants from waiving certain procedural rights in a residential lease agreement, "tenants and landlords [can], however, waive or modify procedural rights in an agreement entirely independent of the rental agreement." (*Williams v. 3620 W. 102nd Street, Inc.* (2020) 53 Cal.App.5th 1087, 1092, citing *Jaramillo*, *supra*, 111 Cal.App.4th at p. 404.) The Aliotos argue that the Agreement was, in effect, a residential lease agreement because it modified the amount of rent due each month. But we cannot ignore that the purpose of the Agreement was to settle the current case, an unlawful detainer action

14

based on the Aliotos' withholding rent when construction on the building continued after resolution of the first unlawful detainer action. And, it is well established, California has a strong public policy favoring settlement of disputes before trial (*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1683), a policy that extends to landlord-tenant disputes (*Geraghty v. Shalizi* (2017) 8 Cal.App.5th 593, 595, 599 [right to reoccupy after owner move-in under city rent ordinance; "the parties should be held to the terms of their negotiated disposition, which afforded benefits to both and avoided burdening the court with a lawsuit"]; *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745–746 [city ordinance voiding waiver of rights in eviction or owner move-in does not apply to settlement of legal claim for valuable consideration]). If the Aliotos' current position were correct, we question whether any settlement agreement resolving an unlawful detainer action in this context or a tenant's claims for inconvenience caused by an ongoing construction project would be permissible.

In these circumstances, we conclude our decision in *Park Lane I* did not create "a manifest misapplication of existing principles resulting in substantial injustice" (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491–492), and we decline to depart from the doctrine of law of the case. Relying upon that doctrine, the trial court did not err in concluding the Agreement's attorney fee clause was enforceable.

## II.   Scope of Attorney Fee Agreement

The Aliotos contend that, even assuming the Agreement's attorney fee provision is enforceable, the trial court exceeded its scope in the award of fees on appeal. Although a trial court has broad discretion in setting an award of contractual attorney fees, reversal is appropriate where the trial court has

15

applied the wrong standard in reaching its result. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

We reject the Aliotos' challenge. First, as we have already discussed, they expressly waived their right to appeal in this matter. (See *Ruiz*, *supra*, 222 Cal.App.4th at p. 603; *Guseinov*, *supra*, 145 Cal.App.4th at p. 952.) Having rejected their public policy challenge to the enforceability of the Agreement, we see no basis to relieve them of their waiver of appellate rights.

In any case, the Aliotos have not shown the trial court abused its discretion or applied the wrong standard in awarding Park Lane its attorney fees on appeal. The attorney fee clause provides that the parties will bear their own attorney fees and costs "unless a motion is filed to enforce the terms" of the Agreement, and that, "[s]hould such a motion become necessary, the prevailing party shall recover his/its fees and costs incurred in bringing an enforcement motion."

The Aliotos contend that the attorney fee provision was narrow in scope, limited to fees incurred in bringing the original motion in the trial court seeking to enforce the Agreement, and that it does not extend to Park Lane's fees on appeal. Pointing out that the Agreement included a waiver of appellate rights, they contend Park Lane never contemplated it would recover attorney fees on appeal because it never contemplated an appeal taking place at all. This argument is entirely unpersuasive. If the Aliotos violated the Agreement by appealing the trial court's adverse ruling, they may not use that fact to avoid their responsibility to pay Park Lane's fees.

The Aliotos further contend the limited scope of the agreement is found in its terms, arguing that " 'bringing an enforcement action' " does not encompass defending against an appeal or post-judgment motions. The general rule, however, is that "[w]hen a contract . . . authorizes the prevailing

16

party to recover attorney fees, that party is entitled to attorney fees incurred at trial and on appeal." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 250; accord, *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 547 (*Frog Creek*).)

We are not persuaded by the Aliotos' reliance on *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 754. The attorney fee provision at issue there, contained in an option agreement, authorized attorney fees for the prevailing party if a " 'legal action' or 'proceeding' 'is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement.' " (*Id*. at p. 749.) One set of parties raised the option agreement as an affirmative defense to an action on an earlier agreement between the parties, and, after prevailing, they sought attorney fees. (*Ibid*.) In the portion of the opinion upon which the Aliotos rely, our high court concluded the assertion of an affirmative defense did not constitute an " 'action' " or " 'proceeding' " " 'brought' " to enforce the agreement or because of a dispute. (*Id* at pp. 752–755.) In doing so, the court noted that " 'courts generally treat the term "action," . . . as referring to the *whole* of a lawsuit rather than to discrete proceedings within a lawsuit.' " (*Id*. at p. 753, quoting *Frog Creek, supra,* 206 Cal.App.4th at p. 527, fn. 6.) Nothing in *Mountain Air* suggests it is proper to divide Park Lane's enforcement action against the Aliotos into its individual procedural steps in determining the availability of attorney fees. Rather, we conclude, the attorney fee provision applies to fees incurred in the whole of the enforcement action, including fees on appeal of the trial court's actions in enforcing the Agreement.

The Aliotos also argue that Alioto crossed out one attorney fee provision and did not intend to allow the second provision to remain in the contract, and they urge us to find fees unavailable on this basis. In *Park Lane I*, we rejected the Aliotos' contention that attorney fees were not available because of Alioto's claimed mistake. We will not revisit that conclusion here.

Finally, we reject a challenge the Aliotos make for the first time in their reply brief. In their opening brief on appeal, the Aliotos fault the trial court for "broadly interpret[ing] the language of the Settlement Agreement as encompassing any legal work related to 'enforcement of the settlement,'" an argument we have rejected. In their reply brief, the Aliotos take a different tack, arguing that the fee award should be overturned on the independent ground that the trial court did not explain, and the Aliotos' own calculations do not disclose, which specific items the court excluded as unrelated to enforcement of the settlement. The argument is a new one and subject to the general rule that we do not consider contentions raised for the first time in a reply brief. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 ["An appellant . . . forfeits an issue by failing to raise it in his or her opening brief"].) We will not consider it.

## DISPOSITION

The order is affirmed. Park Lane shall recover its costs on appeal.

TUCHER, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*Park Lane Associates, LP v. Alioto et al.* (A155781)

18